## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**MARIA AMARO,**

      **Plaintiff,**

**vs.**                                        **CIVIL No. 05-349-RLP**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security**
**Administration.**

## MEMORANDUM OPINION AND ORDER

This is an appeal from a final decision of the defendant Commissioner under the Social Security Act. This court has jurisdiction pursuant to §42 U.S.C. 405(g).

Procedural Background

Maria Amaro ("Plaintiff" herein) filed an application for SSI benefits in December 2001, claiming that she had become disabled on November 7, 2001. (Tr. 46-48). This application was denied on February 20, 2002. (Tr. 26). Plaintiff did not seek further review.

Plaintiff filed a second application for SSI benefits in January 2003 claiming that she had become disabled as of January 9, 2003, due to arthritis and hypertension.[1] (Tr. 50-52, 79). The application was denied at the first and second levels of administrative review. An administrative law judge (ALJ) conducted a hearing on April 28, 2004, determined Plaintiff was disabled under the Social Security Act and awarded benefits in a decision dated September 15, 2005. (Tr. 13-20).

On its own motion, the Appeals Council elected to review the ALJ's decision and reversed the award in a written decision dated January 28, 2005. (Tr. 7-9). The decision of the Appeals

---

[1] In proceedings below, Plaintiff also claimed disability due to depression. This claim has been abandoned on appeal.

Council stands as the final decision of the Commissioner. *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988).

## Vocational Factors

Plaintiff was born on June 4, 1948.[2]  She has a sixth grade education, cannot speak English and has previously worked at a candy factory and as a cleaner at a college washing clothes. (Tr. 85, 76, 106, 267, 17, 92, 94, 80). Her job as a candy factory worker involved displaying, packing and bagging candy, and required her to walk for three hours, stand and stoop off and on for seven hours, and handle large objects weighing up to fifteen pounds frequently for 5 hours, with no climbing, kneeling, crouching or crawling (Tr. 94).

## Plaintiff's testimony

In written materials, Plaintiff has claimed an inability to bend or stoop because of dizziness, joint swelling and pain (Tr. 37), severe pain in all joints (Tr. 112), excessive swelling of her legs (Tr. 42), and an inability to get out of bed at times because of back pain. (Tr. 42). At her administrative hearing, she testified that she had not been able to control her blood pressure (Tr. 273), that she had pain in her neck, knees, wrists, spine (268), she could not drive because of dizziness caused by medications (Tr. 267), that her ankles were frequently swollen and she had to elevate them two-three times per day for 30 minutes to an hour. (Tr. 272-273).

---

[2]Plaintiff was 54, or "approaching advanced age" when her application for benefits was filed, and 56, or "advanced age" when awarded benefits by the ALJ on September 15, 2004.

Medical Evidence

Hypertension

Plaintiff suffers from hypertension, and was treated for elevated blood pressure during the period under review[3]. The record reflects that on several occasions elevated blood pressure corresponded with her failure or inability to take prescription medication as ordered. (See Tr. 169, 167, 237-239). On other occasions, her blood pressure returned to normal ranges after adjustments to her medication regimen. (See Tr. 181-186, 176-179). Plaintiff complained of dizziness or lightheadedness on three occasions during the twenty-one months under review. On the first occasion her blood pressure was elevated, but she had been off medication for several months. (Tr. 169). On the other two occasions, her blood pressure was in normal ranges. (Tr. 166, 164).

Arthritis

In 2001, Plaintiff was diagnosed with mild, degenerative arthritis, commensurate with her age. This was treated with nonsteroidal anti-inflammatory medication and Tylenol, injections of steroids, once into her knee, and once into her wrists, and a short course of oral steroids. (Tr. 139-141, 137, 150, 135, 199, 214-215, 160-162, 154-155).

Plaintiff was examined by Dr. Homero Rentaria, on January 8, 2003, the day prior to her alleged date of onset of disability. She indicated that her arthritis had not changed much, and that she continued to have pain on a usual basis. She also complained of thoracic back pain, but denied lightheadedness, weakness, falls or vertigo. On examination, her extremities showed no clubbing, cyanosis or edema. She did have some tenderness of the joint lines of her knees and of the trapezius muscles of her back. Dr. Rentaria diagnosed polyarthritis with no significant change, and back pain

---

[3]January 9, 2003, to September 15, 2005.

with notable trigger points, which he injected with steroids. (Tr. 200-201).

Plaintiff was next seen by Katherine Mallion, CNP, on March 12, 2003. At this time her left foot was mildly swollen, and she was advised to limit her intake of salt and caffeine. She was given Bextra, a nonsteroidal anti-inflammatory medication, for treatment of arthritic pain. (Tr. 169). Plaintiff was seen again on March 26, 2003, with complaints of left shoulder pain. Her trapezius muscles were tense/tender, with loose knots on palpation, and she advised to use heat, massage and Tylenol. (Tr. 167). On April 23, 2003, Plaintiff's trapezius muscles were again tender, but her extremities had normal range of motion with no arthritic changes (edema) noted. (Tr. 166). On February 27, 2004, Ms. Mallion recorded that Plaintiff had no pain complaints. (Tr. 180). Plaintiff was seen by Karla Bolanos, M.D., on March 29, 2004, and had no pain complaints. On April 16, 2004, Dr. Bolanos noted a complaint of back pain, but prescribed no treatment for it. (Tr.177). Three days later, Plaintiff was seen for a check of her blood pressure, and indicated she had no pain complaints. (Tr. 176).

Plaintiff was evaluated by Don Clark, M.D., on July 1, 2004. This examination had been ordered by the ALJ during her administrative hearing. [Tr. 276]. She complained of bilateral knee and heal pain, lumps over both shoulders, back pain, hand pain and wrist swelling. In terms of pain control, she stated she had been out of Bextra for two months. She described her usual day as occasionally sweeping, watching TV, cooking, shopping for groceries and walking around the block. Her relevant physical examination can be summarized as follows:

- Walks without assistive device
- Range of motion in neck within normal limits
- Reported tenderness in the back from the cervical to lumbosacral junction.

- Shoulders anteflex to 90 degrees.  Right shoulder abducts to 60 degrees, left to 80 degrees.

- Elbows extend to 170 degrees bilaterally, pronation and supination within normal limits.

- Slight puffiness bilateral wrists, but able to abduct 20 degrees, flex 50 degrees and extend 50 degrees bilaterally.  No objective swelling or limitation.  Grip is good.

- Hips flex to 90 degrees bilaterally.

- Knees flex until heel reaches buttocks.

- Normal mobility of ankles, with no edema.

(Tr. 238-239).

Dr. Clark indicated that Plaintiff suffered from muscle aches and pain with no definitive diagnosis.  (Tr. 239).  He felt she could perform a limited range of light work[4], with no manipulative limitations.  However,  because of back pain caused by bending and pulling, and mild wrist swelling, he felt she could only occasionally push, pull, reach, balance, kneel and stoop, and could never climb, crouch or crawl.  Finally, he indicated that Plaintiff's exposure to temperature extremes, vibration and hazards was limited by muscle pain and elevated blood pressure.  (Tr. 240-243).

 Five Step Sequential Evaluation Process.

The Commissioner is required to follow a five-step sequential evaluation process to determine whether a claimant is disabled.  *Williams vs. Bowen*, 844 F.2d 748, 750-52 (10th Cir.1988).  The claimant bears the burden of establishing a prima facie case of disability at steps one through four.

---

[4]Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved.  *Social Security Ruling*  83-10; 20 C.F.R. §416.967(b).  Dr. Clark indicated that Plaintiff's ability to sit, walk and stand was not limited, and that should could lift and carry 20 pounds occasionally and 10 pounds frequently.

*See id.* at 751 & n. 2. At step one, the claimant must show that she is not presently engaged in substantial gainful activity; at step two that she has a medically severe impairment or combination of impairments; at step three that the impairment is equivalent to a listed impairment; and at step four, that the impairment or combination of impairments prevents her from performing her past work. *Id.* at 750-52. If the claimant successfully meets this burden, the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national economy, given her age, education and work experience. *See id.* at 751 & n. 2.

Decision of the Appeals Council

The Appeals Council decided this case at step four of the sequential evaluation process. It found that Plaintiff was not working; that she had "severe"[5] impairments of polyarthritis and hypertension which did not meet or equal a listed impairment; that she retained the RFC for medium work[6] provided she avoid heights and dangerous machinery; and that her testimony was not credible. The Appeals Council found that Plaintiff could perform her past work as a candy factory worker,

---

[5]The term "severe" has special meaning in Social Security terminology. When used at step two of the sequential evaluation process, it describes an impairment that has at least a minimal effect on the claimant's physical and/or mental abilities to do basic work activities. *Social Security Ruling* 85-28. The Appeals Council's decision is imprecise in its use of the term "severe." In the body of its decision and in Finding No.2, it states that Plaintiff has "*severe* impairments" and "*severe* polyarthritis." (Tr. 7, 9). In its discussion of the evidence, however, states "Dr. Renteria . . . did not diagnose a *severe* orthopedic impairment" (Tr. 8), and "claimant has arthritis, but there is no evidence of *severe* limitations. (Tr. 8). Despite this imprecision, I find that the Appeals Council determined that Plaintiff established "severe" impairments for the purpose of proceeding past step two of the sequential evaluation process, but that those impairments cause minimal limitation beyond that threshold level.

[6] Medium work involves lifting of up to 50 pounds at a time, frequent lifting or carrying of objects weighing up to 25 pounds, standing or walking, off and on, for approximately 6 hours in an 8-hour workday, the ability to use the arms and hands to grasp, hold, and turn objects and frequent bending-stooping which requires flexibility of the knees and torso. *Social Security Ruling* 83-10.

and was therefore not disabled. (T. 9-10).

## Standard of Review

This court must determine whether the Commissioner's decision, as rendered by the Appeals Council, is supported by substantial evidence. *Williams v. Bowen*, 844 F.2d at 750; *Fierro v. Bowen*, 798 F.2d 1351, 1355 (10th Cir.1986), *cert. denied* 480 U.S. 945 (1987). Substantial evidence has been defined as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).

The Appeals Council has the authority to reverse factual findings and recommendations made by the ALJ, but in doing so, must articulate specific and legitimate reasons for doing so. *Reyes*, 845 F.2d at 245. This is especially true when the Appeals Council differs with the ALJ's assessment of witness credibility. *Fierro,* 798 F.2d at 1355. This court reviews the Appeals Council's decision with heightened scrutiny to determine if its reasons are supported by the record. *Williams,* 844 F.2d at 754. Findings of the Appeals Council which are supported by substantial evidence, are conclusive. *Fierro,* 798 F.2d at 1355. In reviewing questions of law, however, it is grounds for reversal if the Appeals Council applied the incorrect legal standard. *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988).

## Issues Raised on Appeal

Plaintiff raises numerous issues on appeal. This opinion considers whether the Appeals Council's credibility and RFC findings are supported by substantial evidence and the application of correct legal principles.

Discussion

Credibility

Findings regarding credibility "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125,1131, 1133 (footnote omitted) (10th Cir. 1988). The adjudicator must "articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical. *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (internal quotations omitted), *but see Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000) (*Kepler* does not require formalistic factor by factor recitation of the evidence.).

The Appeals Council found that Plaintiff's subjective complaints were not fully credible. (Tr. 9). In support of this finding, it cited to the following:

- Plaintiff complained of wrist swelling and hand pain, yet examination at the time of that complaint indicated only slight puffiness of her wrists, with good grip strength and good range of motion. ( Tr. 8, 237-239).

- X-rays demonstrate minimal osteoarthritis. (Tr. 8, 150).

- Dr. Rentaria did not diagnose a severe orthopedic impairment, and indicated that Plaintiff was treated with medication for her subjective complaints. (Tr. 8, 200-201).

- Plaintiff's arthritic pain is treated with Bextra and Tylenol, with no long-term side effects. (Tr. 8, 157-158, 206, 154-155; see also Tr. 169, 178-180, Plaintiff stated to medical care providers that she had little or no pain.) She has not required surgery or aggressive treatment, and has not been referred to a pain clinic. [7]

- Plaintiff sweeps, shops, does light cooking and walks around the block daily. (Tr. 8, 238).

---

[7]*Cf. Branum v. Barnhart*, 385 F.3d 1268, 1274 (10th Cir. 2004) (Lack of treatment may be considered in evaluating credibility, even when claimant has a lack of funds to obtain treatment, when is no indication in the administrative record that claimant has ever been diagnosed with a problem that required any form of extensive evaluation or treatment.)

- Plaintiff alleged an inability to perform other household chores, or do much of anything else, (Tr. 8, 66) but there is no clinical evidence to support this level of impairment. (Tr. 8, 237-239).

Each of the factors cited by the Appeals Council is supported by the factual record. Based on the foregoing, I find that the Appeals Council's rejection of Plaintiff's credibility is supported by substantial evidence.

The Appeals Council's finding regarding the Plaintiff's lack of credibility does not compel a finding of not disabled. The Appeals Council must continue with the sequential evaluation process, including evaluation of Plaintiff's RFC. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (1993).

Residual Functional Capacity Evaluation

Step four, at which the Appeals Council found Plaintiff not disabled, is comprised of three phases. In the first phase, the adjudicator must evaluate a claimant's physical and mental RFC. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996) (citation omitted). In this phase, the claimant's individual functional limitations or restrictions are identified and her work-related abilities are assessed on a function-by-function basis. *Social Security Ruling* 96-8p, 1996 WL 374184, at *1. Once this is done, the claimant's RFC is expressed "in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy." *Id*. The second phase, the adjudicator must "determine the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. The final phase, the adjudicator determines "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id*.

Plaintiff bears the burden of providing that her impairments prevent her from performing past

work. *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).  When the ultimate finding of non-disability is made at step four, the adjudicator "is required to make specific and detailed predicate findings concerning [Plaintiff's] RFC, the physical and mental demands of [Plaintiff's] past jobs and how those demands mesh with [Plaintiff's] particular exertional and nonexertional limitations." *Nichols v. Commissioner of Social Security Administration*, 260 F.Supp.2d 1057, 1075 (D. Kan. 2003) (citations omitted).  The elements of the RFC assessment are explained in *Social Security Ruling* 96-8p:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.  A failure to first make a function-by-function assessment of the claimant's limitations or restrictions could result in the adjudicator overlooking some of the claimant's limitations or restrictions.

*Social Security Ruling* 96-8p, 1996 WL 374184, at *7,

In assessing RFC, the adjudicator considers all medical and nonmedical evidence, 20 C.F.R. §416.945, and must affirmatively link the findings to substantial evidence in the record. *See Kepler*, 68 F.3d at 391(Administrative agencies must give reasons for their decisions.)

In this case, the Appeals Council made the following RFC determination:

> The claimant can lift 50 pounds occasionally and 25 pounds frequently.  She can sit, stand and walk 6 hours in each in (sic) and 8 hour day with normal breaks.  She should not work at heights or near dangerous machinery. . . She has no other postural, visual, manipulative, environmental, or mental limitations.

(Tr. 9).

The Appeals Council based this finding on the following[8]:

- Conservative treatment utilized for Plaintiff's complaints. (Tr. 8).

- Rejection of Dr. Clark's functional assessment as lacking any clinical findings of impairment other than subjectively reported pain. (Tr. 7-8).

- Plaintiff's admitted activities of walking, sweeping, cooking and grocery shopping. (Tr. 7).

- Dr. Renteria's January 8, 2003 examination, which noted "lower back and knee pain, but did not diagnose a severe orthopedic impairment and indicated that claimant has been treated with medication for her subjective complaints." (Tr. 8).

- Effectiveness of medication to treat Plaintiff's complaints. (Tr. 8).

The factors cited by the Appeals Council do not support a finding that Plaintiff could perform the lifting and carrying required for medium level work. Plaintiff's admitted daily activities are minimal, and in and of themselves do not translate into an RFC for medium level work. Her description of her past work, which the Appeals Council accepted as accurate, did not require lifting and carrying in the medium exertional level. Dr. Rentaria's treatment note in no way supports an assessment of Plaintiff's RFC for medium level work. There is simply no evidence in the record that Plaintiff is or has ever been capable of performing the lifting and carrying required for medium work. Having found that the Appeals Council's finding at the first phase of step four is not supported by substantial

---

[8]In addition to the following factors, the Appeals Council also cited "significant weight" it gave to the opinion of a non-examining physician that Plaintiff's impairments were not severe. (Tr. 8). I will not consider this factor in determining whether the Appeals Council's findings at step four are supported by substantial evidence or the application of correct legal principles. The document in which the non-examining physician presented his opinion is missing. The administrative record contains a summary of that opinion by a case worker (Tr. 174), which refers to form, "SSA-416, dated 10/14/03." This form is also referred to in a Disability Determination and Transmittal form. (Tr. 28). However SSA-416 is not to be found in the administrative record. There no way of knowing what factors or evidence the non-examining physician considered in arriving at his conclusions. Because the non-examining physician determined that Plaintiff did not have a severe impairment, it is likely that he never considered Plaintiff's RFC. See 20 C.F.R. §416.920.

evidence, this court can not adequately evaluate subsequent findings. To do so would require this court to make findings of fact, which is beyond its jurisdiction.

Plaintiff requests that this court order that this matter be remanded for an award of benefits. I find that such relief is not warranted. Plaintiff's RFC, properly determined, may be sufficient for performance of her past job as she performed it, or as it is performed in the national economy.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision is granted. This matter is remanded to the Commissioner of Social Security for additional proceedings commencing at step four of the sequential evaluation process. Plaintiff shall be permitted to submit additional evidence to the Commissioner.

Richard L. Puglisi
United States Magistrate Judge
(sitting by designation)

evidence, this court can not adequately evaluate subsequent findings. To do so would require this court to make findings of fact, which is beyond its jurisdiction.

Plaintiff requests that this court order that this matter be remanded for an award of benefits. I find that such relief is not warranted. Plaintiff's RFC, properly determined, may be sufficient for performance of her past job as she performed it, or as it is performed in the national economy.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision is granted. This matter is remanded to the Commissioner of Social Security for additional proceedings commencing at step four of the sequential evaluation process. Plaintiff shall be permitted to submit additional evidence to the Commissioner.

Richard L. Puglisi
United States Magistrate Judge
(sitting by designation)